[Civ. No. 11204. Second Appellate District, Division One.—June 12, 1937.]

ELLA W. PROUT et al., Appellants, v. THOMAS PERKINS et al., Respondents.

Denio, Hart, Taubman & Simpson for Appellants.

Roscoe O. Stotter for Respondents.

DORAN, J.—This is an appeal by plaintiffs from an order granting a motion for a new trial on the grounds of the insufficiency of the evidence to justify the decision and that the decision was against law.

It is contended by appellants that there is "no conflict of any kind as to the facts imposing liability" and that "the correct law as applied to the uncontradicted facts, compels a decision for plaintiffs". Inferentially, therefore, it is contended that the court abused its discretion in granting a motion for a new trial.

As has been hitherto declared: "The courts of last resort of this state have repeatedly held that insufficiency of the evidence to justify a verdict is a ground for a new trial which is peculiarly within the discretion of the trial court and its order either granting or denying a new trial will not be disturbed on appeal unless it appears that there was a manifest abuse of discretion" (*Mosekian* v. *Ginsberg*, 122 Cal. App. 774, 778 [10 Pac. (2d) 525] ), and, also (as in *Lambert*

v. *Kamp,* 101 Cal. App. 388 [281 Pac. 690]), "The real issue before this court, therefore, is not the direct question of whether or not the verdict is contrary to law, or whether or not there was an insufficiency of evidence to justify the verdict in regard to damages, but rather the question, Did the trial court abuse its discretion" in granting defendants' motion for a new trial? It also appears to be well settled that "It is the duty of the judge of the trial court to grant the new trial whenever he is not satisfied with the verdict, if tried by a jury, or with the findings, if tried by the court; and he is not bound by the rule of conflicting evidence as is this court." (*Weringer* v. *Rutledge,* 180 Cal. 566, 569 [182 Pac. 31].) In this connection it is further held that "it is only in rare instances and upon very strong grounds that the reviewing court will set aside an order granting a new trial" (*Peri* v. *Culley,* 119 Cal. App. 117, 120 [6 Pac. (2d) 86, 87]), and also that "where a new trial has been granted on the ground of insufficiency of the evidence, the action of the trial judge is conclusive upon the appellate court, unless there has been an abuse of discretion . . . because the trial judge must weigh and consider the evidence of both parties and determine for itself the just conclusion to be drawn from it; and it is the duty of such court to grant a new trial if not legally satisfied with the decision. When, therefore, an appeal is taken from an order granting a new trial on this ground it is incumbent upon the appellant to show that the trial judge abused the discretion lodged with him and this can rarely be done except by showing that there is no evidence which would have supported a verdict for the respondent." (*Hanlon D. & S. Co.* v. *Southern Pac. Co.,* 92 Cal. App. 230, 232 [268 Pac. 385].) "Every presumption will be indulged in favor of the proper exercise, by the court below, of its judicial discretion in granting a new trial upon the ground of the insufficiency of the evidence to support the decision. And it is the well-settled rule of this court not to interfere unless there has been a manifest abuse of discretion." (*Crooks* v. *Miller,* 89 Cal. 35 [26 Pac. 615].)

The foregoing excerpts from the authorities constitute a brief outline of the law applicable to the questions involved in this appeal.

The action was for personal injuries sustained by appellant Ella W. Prout as the result of a fall in an unfurnished apartment or flat rented from respondents. The record re-

veals the facts to be as follows: Appellant Ella W. Prout undertook to remove something from the top of a small cabinet in the bathroom of said apartment. Excerpts from her testimony on the subject are as follows: ''I was reaching up over the cabinet to get an article from the top of the cabinet. . . . I climbed up on a little kitchen stepladder, and had one foot on the stepladder, and one on the top of the bathtub, the flat surface of the tub.'' The top of the small stepladder was ''almost flush with the top of the bathtub''. To continue with her testimony: ''I was reaching over the top of the cabinet'' and ''The cabinet came over on me.'' ''Q. (On direct examination). Had you placed any pressure of any considerable amount on the edge of the cabinet at that time? A. I can't say that I had. I just reached up over it. . . . Q. Had you placed any weight by your hand upon the edge of the cabinet at the time it started to tip towards you? A. I don't know that I did. . . . Well, when the cabinet tilted towards me, it pushed me backward, over the tub, and I suppose I fell on the floor, because that is where I was found. It was all so quick; I don't know myself what happened, because it was all over in an instant. . . . Q. Did you lose consciousness subsequently? A. Not at all.'' The witness further testified that during the four months that she had occupied the apartment she used the cabinet almost daily and had never noticed that it was unattached or loose.

The cabinet referred to by the witness, which was located in the bathroom, was a complete, separate unit, having back, bottom, top and sides, with doors in front. It was placed in a recess in the wall which extended from a level flush with the top of the perpendicular end of the bathtub to the ceiling. This recess was just the width of the bathtub and about ten inches deep. The bathroom was trimmed with a board or strip of finished lumber about four inches wide and five-eighths of an inch thick, which extended around the walls of the bathroom about four feet from the floor. This trim extended into the sides and across the back of the recess above described. The bottom of the cabinet, which cabinet was about two and one-half feet high and the same depth as the recess, rested on the trim but was not secured to the walls.

It is earnestly contended by appellants that the landlord is liable for injuries caused by personal property which is furnished with a rented apartment, and they rely upon the

authority of *Fisher* v. *Pennington,* 116 Cal. App. 248 [2 Pac. (2d) 518], in which case the plaintiff was injured as the result of the collapse of a disappearing bed in which plaintiff was sleeping. In that case the court held that the landlord, in omitting to perform a duty imposed under the law, namely, to supply a bed safe to sleep in, was guilty of negligence, holding that the bed was personal property and that by virtue of the authority of section 1955 of the Civil Code, in effect, it should have been in "a condition fit for the purpose for which" it was let.

Appellants, by analogy, argue that the cabinet above described was personal property, was not fit for its intended use, and that therefore the authority of *Fisher* v. *Pennington, supra,* is controlling. Bearing in mind that the question presented herein is, "Whether the trial court abused its discretion in granting the motion for a new trial", it cannot be said that the authority relied upon by appellants is necessarily controlling. In the Fisher case, *supra,* there was no question but what the bed was, at the time of the accident, being used for its intended use. Upon the motion for a new trial in the instant case the trial judge, after having reconsidered the evidence, might well have been in doubt as to whether the cabinet in question was being used for its intended use at the time of the accident, for the record reveals the testimony of Mrs. Henderson, one of the defendants' witnesses, to be as follows: "Well, I was in my front room, with my mop, dusting around the rugs, and I made up my mind to go to a card party and I was hurrying, and I heard a noise, a racket, I thought it was the children outside, so I didn't pay any attention to it, but pretty soon I heard it again. Well, I don't know what seized me, but I ran to the hallway and tossed my mop aside and ran out the back door, and I called up and asked Mrs. Prout, Mrs. Prout, are you calling me? And she said, Yes. Come quick. I have fallen and badly hurt myself. So I went up the stairs two at a time, and I was there very shortly, and found her lying on the bathroom floor. Q. Which way was her head and feet? A. Her face faced the door. Q. That would be west? A. Northwest. She was lying in this position (diagonally). And I asked her what happened and she said that she had an overnight case and was going to put it up, she said, on the top of the cabinet, and she got on the stepladder, and she said

she became somewhat dizzy and took hold of that cabinet to steady herself, and she said she did not know what happened after that. Down she went, and the cabinet went like this, in the bathtub. Q. Did you notice a stepladder beside the bathtub there? A. Yes.''

If, as Mrs. Henderson testified, appellant Ella W. Prout became dizzy and took hold of the cabinet to steady herself, can it be said that by such attempted use the cabinet was being used for its intended purpose? Suppose, for example, that the cabinet had been securely fastened to the wall and appellant, about to fall, had grasped the knob of one of the small doors to the cabinet, which knob then pulled off, could it be said that because the knob failed as a supporting medium under such circumstances, it was defective or improperly installed?

In the light of the law of the case, hereinbefore quoted, and the record above referred to, to hold that the trial court abused its discretion in granting a motion for a new trial would be unwarranted.

The order is affirmed.

Houser, P. J., and York, J., concurred.