## KING v. UNION PAC. R. CO.

No. 7338.  Decided December 13, 1949.  (212 P. 2d 692.)

See 50 C J. S., Juries, sec. 122. New trial as within jurisdiction of trial court, see note, 98 A. L. R. 941. See, also, 39 Am. Jur. 199.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray,* Salt Lake City, for appellant.

WOLFE, Justice.

This action was brought under the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq., hereinafter referred to as the F. E. L. A., by the administrator of the estate of Wendell O. Jorgensen to recover for the alleged wrongful death of Jorgensen occurring in the course of his employment as a brakeman for the defendant railroad company.

The case has been tried twice. At the first trial the jury returned a verdict of "no cause of action." The plaintiff filed a motion for a new trial which the court granted. Upon the second trial, a verdict of $75,000 was returned in

favor of the plaintiff by the jury. The defendant filed a motion for a new trial on several grounds, one of which was excessive damages. The court made an order granting the motion for a new trial unless the plaintiff within ten days consented to a reduction in the judgment to $50,000. Plaintiff filed his written consent to the reduction of the judgment and the court denied the defendant's motion for a new trial. The defendant now appeals from the judgment, assigning as the sole error, an abuse of discretion on the part of the trial court which first heard the case in granting the plaintiff's motion for a new trial after the jury had returned a verdict of "no cause of action."

The facts surrounding the accident in which Jorgensen lost his life are as follows: The defendant maintains a branch line of railroad in Idaho running generally north and south, paralleling the main line between Idaho Falls on the north and Goshen Junction on the south. This branch line lies east of the main line and is known as the Goshen branch. The stations on the branch line, moving south from Idaho Falls, are: Orvin, Lincoln, Lincoln Junction, Wilkinson, Ammon, Hackman, Indian, Gerrard, Cox, Goshen, Anton and Goshen Junction, a total distance of 27.7 miles. Operations on this line are seasonal and involve the setting out of empty cars at the above named stations and picking them up and returning them to Lincoln or Idaho Falls when they are loaded. The traffic on this branch line is principally in sugar beets, potatoes and pumice stone. The operation is referred to as the Lincoln beet job. The Utah-Idaho Sugar Company maintains a sugar factory at Lincoln. The beet job commenced for the 1947 season on September 22, 1947, and traffic was handled until January 10, 1948, at which time service was discontinued for the season. The deceased had worked every day, including Sundays, from September 22 until October 28, the day of the accident. Customarily, and on the day of the accident, the train crew with which Jorgensen was working was engaged in switching between Idaho Falls and Lincoln in the morning,

and in the afternoon proceeded south as far along the branch line toward Goshen Junction as was necessary to take care of the business of setting out empties at various stations where needed and picking up such loads of beets, potatoes, and pumice stone as were to be moved. The train operated out of Idaho Falls under a "work order." There are no station agents at any of the stations south of Lincoln Junction and the "work order" referred to authorized the crew on the day of the accident to proceed along this branch line at will doing whatever work was necessary. The train at the time of the accident consisted of a steam locomotive, ahead of which was being shoved a caboose, and ten empty gondola cars trailing behind the engine. The crew consisted of Edward Freeman, conductor; James S. Stoddard, engineer; a fireman by the name of Eaton; Paul Croft, rear brakeman; and the deceased, Jorgensen, head brakeman. The deceased as head brakeman was riding on the leading platform of the caboose together with Paul Croft, the other brakeman, as the train proceeded south from Ammon. The caboose door was closed and conductor Freeman was inside working at his desk. Approximately one-half mile south of Ammon, at about 2:50 p. m., while the train was traveling from fifteen to twenty miles per hour, the deceased fell forward from the caboose platform in front of the moving train and was killed instantly.

Four specific allegations of negligence on the part of the railroad were made by the plaintiff and were submitted to the jury in the instructions. The substance of the allegations is as follows:

I. That the defendant failed to furnish decedent a reasonably safe place to work when it required him to perform his duties from the platform of the caboose.

II. That the defendant was negligent in failing to furnish and maintain a proper safety chain and hook across the opening in the railing on the end of the caboose.

III. That defendant was negligent in shoving the caboose ahead of the engine.

IV. That the defendant failed to furnish decedent a safe place to work in that the caboose, owing to its size, weight, and construction, swayed from side to side and pitched up and down when being shoved along the tracks at the point of the accident.

The defendant denied its negligence in each and all of the foregoing particulars, and charged that the deceased was negligent, and that said negligence was the sole proximate cause of Jorgensen's death.

The trial judge at the time he granted the plaintiff's motion for a new trial assigned his reasons for so doing in a written decision. The pertinent parts of that decision are as follows:

"The Jury by its verdict absolved the defendant of all negligence which was the proximate cause of the injuries to and death of the decedent. It did this despite the *uncontroverted* evidence (1) that the caboose from which the decedent fell was being propelled ahead of the locomotive and of the train, thereby rendering such an accident possible; and (2) that the safety chain mentioned in the evidence was inadequate, at least that when it was put to the test it failed to perform the function for which it was intended.

"The motion for new trial therefore is granted, primarily on the grounds stated in Paragraph 8 of plaintiff's Notice of Intention to move for a New Trial, and also upon the general grounds set forth in Section 104-40-7 Utah Code Annotated, 1943. There was no doubt a misapprehension, or a disregard, on the part of the Jury either of the evidence, or of the Court's instructions, or of both." (Italics added.)

Sec. 104-40-7, U. C. A. 1943, referred to by the trial judge in his decision, provides:

"The verdict of a jury may also be vacated and a new trial granted by the court in which the action is pending, on its own motion, without the application of either of the parties, when there has been such a plain disregard by the jury of the instructions of the court or the evidence in the case as to satisfy the court that the verdict was ren-

dered under a misapprehension of such instructions or under the influence of passion or prejudice."

The grounds stated in paragraph 8 of the plaintiff's notice of intention to move for a new trial also referred to by the trial judge are as follows:

"That the verdict and judgment are contrary to the evidence and against the law."

The defendant's sole assignment of error, viz., that the trial court abused its discretion in granting a new trial in favor of the plaintiff, necessitates a determination of the breadth of the trial court's discretion in granting a new trial. The defendant concedes that the question of granting a new trial is a matter largely within the discretion of the trial court, but argues that the preservation of the right to trial by jury requires the trial court in most cases to uphold the verdict of the jury when that verdict is supported by substantial competent evidence even though the record is such that the jury may well have found otherwise. The plaintiff, on the other hand, argues that the trial court's discretionary power to act upon a motion for a new trial is a part and parcel of the right of trial by jury and that the exercise of such power does not invade such right when the evidence is conflicting upon material issues of liability and when there is any evidence which would support a judgment in favor of the moving party.

Prior decisions of this court have recognized a wide difference in the power and authority which a trial court possesses to order a new trial from that possessed by this court. This difference was pointed out in *James* v. *Robertson,* 39 Utah 414, 117 P. 1068, 1074, where we said:

"While the district court, in the exercise of a sound legal discretion, without basing his ruling upon any specific error of law, may, under certain circumstances, possess the authority to grant a new trial, yet we cannot do so, nor can we exercise the discretion which the district court might, and in some cases perhaps ought to have, exercised. In

cases like the one before us, where all other assignments fail, and the only available assignment is that the evidence does not justify the verdict of the jury, and where the trial court has refused to grant a new trial, all that we are authorized to do is to look into the evidence to ascertain whether there is any substantial evidence in support of every material element which plaintiff is required to establish in order to recover. If there is such evidence, then, so far as we are concerned, the verdict must stand, although in our judgment, if we passed on the facts, the verdict upon the whole evidence should have been to the contrary. Nor can we, under the guise of reviewing an abuse of discretion by the trial court in refusing to grant a new trial upon the ground that the verdict is not supported by the evidence, pass upon the weight of the evidence. What the district judge might, or even should, have done in this regard we may not do for him, simply because he refused to do it." See a similar statement in *Valiotis* v. *Utah-Apex Mining Co.*, 55 Utah 151, 184 P. 802.

In one of its earliest cases this court announced that where the testimony is conflicting, the granting or refusing of a new trial rests peculiarly within the distcretion of the trial court. *Newton* v. *Brown,* 2 Utah 126. A short time later in *Davis* v. *Utah Southern R. Co.,* 3 Utah 218, 2 P. 521, we similarly stated that where there is a substantial conflict of evidence on a material issue, we will not review the discretion exercised by the trial court in granting a new trial. Again in *Utah State Nat. Bank* v. *Livingston,* 69 Utah 284, 254 P. 281, this court applied the same rule and upheld a trial court which had granted a new trial where the evidence was conflicting upon an essential issue of the case. *Thompson* v. *Bown Live Stock Co.,* 74 Utah 1, 276 P. 651, accord.

From an examination of the California decisions, it is apparent that the trial courts of that state possess a wide latitude in granting motions for new trials. Sec. 104-40-2, U. C. A. 1943, which enumerates the grounds upon which a new trial may be had upon motion of the parties was taken from the California Code and is substantially identical with Cal. Civil Proc. Code, Sec. 657. In California it is not an abuse of discretion for a trial court to grant a new trial upon the ground of insufficiency of evidence to justify the

verdict (1) where there is a conflict in the evidence or where there is substantial evidence which would support a judgment in favor of the party asking for a new trial, *Union Oil Co.* v. *Hane,* 34 Cal. App. 2d 689, 94 P. 2d 387; *Roma Wine Co., Inc.* v. *Hardware Mutual Fire Insurance Co. of Minnesota,* 31 Cal. App. 2d 455, 88 P. 2d 260; (2) unless a decision in favor of the moving party would have no legal support in the evidence, *Erickson* v. *Grady,* 119 Cal. App. 596, 6 P. 2d 1002; *Laverne* v. *Dold,* 17 Cal. App. 2d 180, 61 P. 2d 497; (3) when the evidence is conflicting upon the issues to be decided since the trial court is "at liberty to find either way" on the motion; also when the evidence is not conflicting, and all the proof seems to be favorable to one or the other of the parties litigant, since the trial court must determine the question as to the "probative force or evidentiary value of the testimony," *Kehlor* v. *Satterlee,* 37 Cal. App. 2d 116, 98 P. 2d 759, 760; and (4) even where there is sufficient evidence to support the judgment on appeal had the new trial been denied. *Glascock* v. *Watters,* 136 Cal. App. 713, 29 P. 2d 434. See *Gold* v. *Arizona Realty & Mortgage Co.,* 12 Cal. App. 2d 676, 55 P. 2d 1254, where an order granting a new trial was reversed because there was no evidence which would support a verdict in favor of the moving party.

In *Rose* v. *Carter,* 29 Cal. App. 2d 191, 84 P. 2d 174, 175, the jury returned a verdict for the defendant and the trial court granted a motion for a new trial upon the ground of insufficiency of the evidence. Upon appeal by the defendant the court said:

"The appeal, from defendants viewpoint is by no means unjustified or without merit. A careful reading of the testimony reveals a generous abundance of evidence in support of the jury's verdict. Indeed, in the light of the record, any other verdict could scarcely have been expected. Nevertheless, the law is well settled that 'insufficiency of the evidence to justify a verdict is a ground for a new trial which is peculiarly within the discretion of the trial court, and its order either granting or denying a new trial will not be disturbed on appeal, unless it appears that there was a manifest abuse of dis-

cretion.' *Prout* v. *Perkins,* 21 Cal. App. 2d 343, 69 P. 2d 194, 195. Moreover, 'If there is any appreciable conflict * * * action of the court in granting a new trial is conclusive on the appellate court.' *Teel* v. *Camden Fire Ins. Ass'n,* 1 Cal. App. 2d 625, 37 P. 2d 131. And, 'Every presumption will be indulged in favor of the proper exercise by the court below of its judicial discretion in granting a new trial upon the ground of the insufficiency of the evidence to support the decision'. *Prout* v. *Perkins,* supra. There is an appreciable conflict in the evidence, under which circumstances, to hold that the trial court abused its discretion, would be unwarranted as contrary to the weight of authority."

The duty of a trial judge in considering a motion for a new trial was well stated in *Nelson* v. *Angelus Hospital Ass'n of Los Angeles,* 23 Cal. App. 2d 71, 72 P. 2d 169, 171. There the court said:

"The law is well established that, on consideration of a motion for new trial on the ground of insufficiency of the evidence to justify the verdict or decision, a trial court is not particularly concerned with the fact (if it so appear that * * * the evidence [is] 'conflicting.' To the contrary, notwithstanding any such conflict, or even though the apparent weight of the evidence should be in support of the 'verdict or decision,' since it is the personal duty of the trial judge to weigh and to consider the evidence and to reach a just conclusion thereon, if he be satisfied that the verdict or decision in question is not in fact supported by the evidence, or that it is contrary to the weight of the evidence, he is not only authorized, but it is his bounden duty to grant the motion for new trial. 20 Cal. Jur. 117, 118, and authorities there cited. In such a situation, on appeal from the order, all that is required to sustain it is the fact that the record discloses substantial evidence in support of the conclusion that has been reached by the trial court in that respect."

The discretion possessed by trial courts in Oklahoma is perhaps even broader than in California. In *Employers' Casualty Co.* v. *Stephens,* 185 Okl. 81, 90 P. 2d 635, 636, a new trial was granted in favor of the plaintiff and the court said

"it is not an abuse of discretion to grant a new trial where plaintiff's evidence does not clearly establish that he was not entitled to recover, notwithstanding that evidence might not have supported a judgment in his favor." *Gorton* v. *Manning,* 179 Okl. 415, 65 P. 2d 1211.

And in *Belford* v. *Allen*, 183 Okl. 261, 80 P. 2d 676, the jury returned a verdict for the defendant in a wrongful death action. The trial court granted plaintiff's motion for a new trial. The defendant appealed admitting that there was sufficient evidence, had it been believed, to sustain a verdict for the plaintiff, but contended that the evidence was so overwhelming against the plaintiff that the granting of the motion amounted to an abuse of discretion. The court held that where the evidence is conflicting the trial judge has the duty to weigh the evidence and to approve or disapprove the verdict, and if the verdict is such that in the opinion of the trial court, it should not be permitted to stand and it is such that he cannot conscientiously approve it and believe it should be for the opposite party, it is his duty to set it aside for a new trial. See *Nevada Rock & Sand* v. *Grich*, 59 Nev. 345, 93 P. 2d 513, where the Supreme Court of Nevada stated when it would and would not disturb an order granting a new trial.

The defendant refers us to *Klinge* v. *Southern Pacific Co.*, 89 Utah 284, 57 P. 2d 367, 105 A. L. R. 204, wherein we said that state courts are governed in their construction, application, and interpretation of the F. E. L. A. by the decisional law of the federal courts. Admitting this to be true, neither party has cited any federal cases holding or intimating that a trial judge in passing upon a motion for a new trial in an F. E. L. A. case has any less discretion than he has in other civil actions. On the contrary, in *Cheffey* v. *Pennsylvania R. Co.*, 79 F. Supp. 252, 260, an action arising under the F. E. L. A., a federal district court granted a new trial in reliance upon *Garrison* v. *U. S.*, 4 Cir., 62 F. 2d 41, where it was said:

"Where there is substantial evidence in support of plaintiff's case the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guarantee of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear

weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice."

The defendant urges that if a trial judge is allowed to set aside a verdict returned by a jury which is supported by substantial competent evidence, there results an infringement upon its right to a trial by jury. There is no merit in this contention. The Supreme Court of the United States in *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 19 S. Ct. 580, 585, 43 L. Ed. 873, amply answered this argument when it said:

" 'Trial by jury,' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of 12 men before an officer vested with authority to cause them to be summoned and impaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of 12 men in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict, if, in his opinion, it is against the law or the evidence."

In *Whitfield* v. *De Brincat,* 35 Cal. App. 2d 476, 96 P. 2d 156, the court declared that the constitutional right in certain proceedings to have issues determined by a jury is subject to the wide discretion of the trial court, and that the rule that the trial judge, when convinced that the evidence is insufficient to justify the verdict or that the weight of the evidence is against the decision, should grant a new trial, is a salutary one for the protection of litigants.

Turning now to the facts of the instant case, it is manifest that the trial judge did not abuse his discretion in granting a new trial for the plaintiff. As has been pointed out, the trial judge based his decision upon the fact that

"The jury by its verdict absolved the defendant of all negligence which was a proximate cause of the injuries to and death of the decedent. It did this despite the *uncontroverted* evidence (1) that

the caboose from which the decedent fell was being propelled ahead of the locomotive and of the train, thereby rendering such an accident as caused the death of the deceased possible; and (2) that the safety chain was inadequate, at least that when it was put to the test it failed to perform the function for which it was intended." (Italics added.)

The defendant contends that the judge's first reason is faulty because it apparently predicates liability upon the fact alone that the caboose was being shoved ahead of the engine irrespective of whether that practice constituted negligence and was a proximate cause of the decedent's death. While taken literally and read alone, his first reason might be susceptible of that interpretation, we maintain no doubt but what the judge meant that there was uncontroverted evidence that such practice was negligent and a proximate cause of the decedent's death. The sentence preceding his first reason indicates that the judge did not overlook negligence and proximate cause as elements of the plaintiff's cause of action. As evidence that the shoving of the caboose ahead of the engine constituted negligence on the part of the defendant, the plaintiff adduced testimony indicating that the defendant in so doing violated its own Rule 802(J) which states that

"Cars must not be handled ahead of engines between stations, except when necessary to take cars to and from a spur or in work train service, and the movement then must be for no greater distance than necessary."

The defendant in an effort to show that there was no violation of this rule introduced evidence that the train was a "work train" operating under "work train orders;" also that as far as the train crew knew there might be cars ready to be moved at Cox, a station toward which the train was traveling at the time of the accident; and that the movement to Cox was not for a greater distance than necessary.

As to the second reason stated in the trial judge's decision, viz., that the safety chain across the railing on the end of the caboose was inadequate, Paul Croft, the rear brakeman who was riding on the leading platform of the caboose with Jorgensen at the time of the accident testified that the hook on the chain was considerably smaller than the hook on ordinary chains used on cabooses; that he (Croft) did not regard the chain in question as being safe and proper; and that the hook was of such nature that it could be forced out of the hole by anything heavy coming in contact with it. Fenton Wilson, a switchman for the defendant and a brother-in-law to the deceased, testified that shortly after the accident he tested the chain in question and found that by pushing down in the middle of it, or striking it from underneath, it would become disengaged; that he had never seen a safety chain with a hook on it like this one; and that in his opinion it was not a standard safety chain. Leo Williams, the coroner at Idaho Falls, testified that the hook on the chain was not difficult to remove from the ring it was placed in. There is no dispute that the chain was disengaged from the ring and hanging down immediately after the accident. Williams, however, did admit that to disengage the chain it was necessary to take hold of the hook with the hand, raise it in a vertical position and twist the hand slightly. The defendant adduced testimony that the hook on the chain in question resembled the ordinary hook used. Furthermore, it argues that assuming the chain was inadequate, the jury could have reasonly inferred that the inadequacy was not causally connected with the accident, but that Jorgensen was toying with the chain, dislodged it, dropped it, and fell when he reached for it.

We cannot agree with the trial judge that the evidence is "uncontroverted" in the two respects mentioned by him in his decision. However, as has been pointed out, it is not necessary that the evidence be uncontroverted in favor of the moving party before the trial court can grant a new trial. The evidence in the instant case

as to the two particulars mentioned by the trial judge is conflicting and there does appear in the record substantial competent evidence which would support a verdict for the plaintiff. Nothing more need appear. The defendant does not contend that the jury could not have reasonably found for the plaintiff. The defendant's contention that the trial judge in most cases should not grant a new trial when the verdict is supported by substantial competent evidence cannot find support in the authorities. If what the defendant contends for were the law, the trial judge would have no authority to weigh the evidence and decide a question of fact, but he would be limited to determining a pure question of law as is this court limited by the Constitution when deciding appeals of cases in law.

Too, it should be kept in mind that this is an action brought under the F. E. L. A. in which contributory negligence on the part of a plaintiff does not operate as an absolute bar to his recovery, but operates only to reduce in proportion the amount of damages recoverable by him. The verdict of "no cause of action" returned by the jury in the instant case absolved the defendant from all actionable negligence on its part. Thus when the trial judge granted the new trial he was not necessarily of the opinion that the deceased was not contributorily negligent in any respect whatever, but only that Jorgensen's contributory negligence, if any, was not the sole proximate cause of his death. Viewed in this light, the trial court's action in granting a new trial is more readily justified in reason than it would be in a tort action not brought under the F. E. L. A.

The defendant refers us to recent decisions of the Supreme Court of the Unted States in which the power of trial courts to direct verdicts in F. E. L. A. cases has been severely restricted. See *Wilkerson* v. *McCarthy*, 336 U. S. 53, 69 S. Ct. 413, 93 L. Ed. ..., and *Corey* v. *Southern Pacific Co.*, 335 U. S. 520, 69 S. Ct. 275, 93 L. Ed. .... From these decisions the defendant argues that if a trial

court is allowed in the exercise of its discretion to set aside jury verdicts amply supported by substantial evidence, that the trial court is accomplishing by indirection the very thing which the Supreme Court of the United States has enjoined. The difficulty with the defendant's argument is that it overlooks the reason why the Supreme Court of the United States has carefully scrutinized F. E. L. A. cases in which a trial judge has directed a verdict for one of the parties litigant such as the *Wilkerson* and the *Corey* cases. Mr. Justice Black in delivering the opinion for the court in the *Wilkerson* case stated that certiorari was granted in that case because of the importance of preserving for litigants in F. E. L. A. cases their right to trial by jury. In granting a new trial the trial court in the instant case did not encroach upon the prerogative of the jury and determine itself the issues of negligence and proximate cause as was the case in the *Wilkerson* and *Corey* cases. All that resulted from the granting of the new trial was that the determination of the issues upon which liability was dependent was taken away from one jury and given to another jury. There was no usurpation by the trial court of the jury's function. As was observed by Lord Mansfield in *Bright* v. *Eynon*, 1 Burrows 390, the effect of a new trial is

"no more than having the cause more deliberately considered by another jury, when there is reasonable doubt, or perhaps a certainty that justice has not been done."

Having decided that the trial judge did not abuse his discretion in granting a new trial upon the ground of insufficiency of the evidence to justify the verdict, and inasmuch as that was the primary ground relied upon by the trial judge, it is unnecessary to determine whether the granting of the new trial can be sustained upon the ground stated in Sec. 104-40-7, U. C. A. 1943, upon which the trial judge also relied. Nor do we deem it necessary to express any opinion as to whether the evidence as to particulars other than those relied upon by the trial judge in his de-

cision would have justified the trial judge in granting a new trial.

.The judgment below is affirmed. Costs to the respondents.

WADE, LATIMER, and McDONOUGH, JJ., concur.

PRATT, Chief Justice (dissenting).

I wonder if the principles of law presented in the prevailing opinion have been properly applied to the facts of this case.

Suppose we could have looked into the jury room where the first jury was considering the merits of the case. Would there have been anything unreasonable in finding an argument in progress along the following lines?

"But there is no question about the fact that the railroad was negligent in driving the caboose ahead of the engine and that they were negligent in failing to keep a proper chain and hook across the opening of the railing on the end of the caboose."

"Ah yes!—let's admit that, but notice what the court says in his instruction #8—he says that the negligence must be the proximate cause, in whole or in part, of the death. Now I can't see anything about the driving of the caboose ahead of the engine that caused this man to lose his balance. For instance: If they had hit some kind of an obstruction that they didn't see because the caboose was in the way, I can get a connection between that and his fall—but that's not claimed. Then, as to the bad chain, how do we know what caused him to go through that? What was he doing at the time? Of course, we can guess this, that, or the other thing, but the Judge said in his instruction #17 that we've got to decide according to the evidence given us, not on outside matters. It looks to me like we ought to return a verdict of no cause for action."

Let us assume, then, that following the last statement a vote was taken and the jury decided upon the "no cause of action" verdict which was returned into court.

Now the court, in granting a new trial, states that the jury

"absolved the defendant of all negligence which was the proximate cause of the injuries to and death of the decedent. It did this despite the uncontroverted evidence (1) that the caboose from which the decedent fell was being propelled ahead of the locomotive and of the train, thereby rendering such an accident possible; and (2) that the safety chain mentioned in the evidence was inadequate, at least that when it was put to the test it failed to perform the function for which it was intended."

Is he not assuming that the proof of the alleged acts of negligence, of necessity carries with it the proof of the required causal connection to the death of deceased? Stating it in a different way, the court has, in effect, said this: The jury freed defendant from the responsibility for its negligence in spite of the fact that the evidence stands uncontroverted that it was negligent.

This is just another was of saying that uncontradicted proof of negligence in and of itself establishes the proximate cause relationship to the death. I have tried, above, to illustrate the fallacy of this reasoning by an imaginary peek into the jury room.

It it be assumed that what the court meant was that the jury found the defendant not negligent at all; then I ask: How can he arrive at such a conclusion in view of the fact that he did not know what took place in the jury room? The imaginary argument illustrates what might well have taken place.

I find it impossible to measure the soundness of the lower courts exercise of discretion by his reasoning and to conclude that he was justified in granting a new trial. I know of no better measure for the soundness of his exercise of discretion than that advanced by himself. Referring to Section 104-40-7, U. C. A. 1943 (quoted in the prevailing opinion) the expression "plain disregard * * * of * * * the evidence * * *" is used. It seems rea-

sonable to look for something in the record or in the court's reasoning viewed in the light of the record to which one may point as evidencing that *"plain* disregard" of the evidence. The lower court, apparently, advanced the uncontroverted character of the evidence, but the prevailing opinion holds that he was in error as to that. What then is the foundation of this decision?