KORLESKI, Appellant, v. LANE and another, Respondents.

*March 10—April 5, 1960.*

166

For the appellant there was a brief by *Earl F. Kileen* of Wautoma, attorney, and *Henry P. Hughes* of Oshkosh of counsel, and oral argument by *Mr. Hughes*.

For the respondents there was a brief by *W. T. Kuchenberg*, attorney, and *James R. Joyce* of counsel, both of Appleton, and oral argument by *Mr. Joyce*.

FAIRCHILD, J. 1. *Damages.* We agree with the circuit court that the jury's assessment of $3,000 as Korleski's damages for personal injuries was very low for the injuries described, but not so low as to require a finding that the jury was perverse.

2. *Validity of apportionment of negligence.* The jury must have found that Lane, inattentive to traffic approaching from the opposite direction, inadvertently operated his car on the wrong side of the roadway; that Korleski approached at an excessive speed, and failed to apply his brakes and get his car off the pavement to the right as soon as he should have after observing the danger. The jury then found that the negligence chargeable to Korleski, excessive speed and failure to take emergency action more quickly, was equal to the negligence chargeable to Lane, operation on the wrong side of the roadway, failure to keep a lookout, and improper management and control after the danger had been observed. Comparison of negligence is peculiarly within the province of the jury, *Hadjenian v. Sears, Roebuck & Co.* (1958), 4 Wis. (2d) 298, 303, 90 N. W. (2d) 786, and we are not prepared to say, as a matter of law, that the causal negligence of Korleski did not equal the causal negligence of Lane.

*3. New trial in the interest of justice.* It appears to us probable, however, on our review of the record, that the apportionment of 50 per cent of the causal negligence to plaintiff Korleski does represent a miscarriage of justice, and we therefore, as a matter of discretion, order a new trial. Sec. 251.09, Stats. Since there is to be a new trial, we discuss only such parts of the evidence as necessary to indicate the reason for our action.

*4. Korleski's negligence as to management and control.* Korleski testified on adverse examination that the cars might have been 1,000 feet apart when he first saw Lane, although at the trial he said that the distance was 600 feet. Lane began to "wander" or "drift" onto the east half of the roadway shortly after Korleski first saw him. Assuming the lowest speeds testified to, 35 miles per hour for Lane and 65 miles per hour for Korleski, and the longest distance, it would take less than seven seconds for the two cars to meet after Korleski first saw Lane. Although the time was short, the testimony shows that Korleski could have applied his brakes and swung to his right sooner than he did. Lane's "wandering" toward the east may have given Korleski sufficient notice of danger so that failure to act more promptly could be found to be negligence. See *Erdmann v. Wolfe* (1960), 9 Wis. (2d) 307, 313, 101 N. W. (2d) 44, and cases there cited. But it is clear that Korleski's opportunity was very brief at best, and that the initial danger was needlessly created by Lane's position on the highway and inattention to approaching traffic.

*5. Korleski's negligence as to speed.* Korleski testified that his speedometer registered 58 miles per hour. Opperman testified that his speedometer registered 65 miles per hour. Williams, sitting at Opperman's right, said, "It looked about 70 from where I was sitting." There was testimony that the driver of an automobile is in a position to

read the speedometer with greater accuracy than a passenger; that because of the angle at which a passenger on the front seat views the speedometer, the indicated speed appears either higher or lower to the passenger than it does to the driver. Whether higher or lower depends upon the manner in which the speedometer is constructed. A mechanic testified to the effect that in a 1955 Mercury, such as Opperman was driving, the indicated speed would appear lower to a front-seat passenger than it would to the driver. This was at least some evidence that Opperman's speedometer actually indicated a higher speed than the 70 miles per hour appearing to Williams.

Counsel for plaintiff Korleski argue that even if Korleski was traveling faster than 65 miles per hour, his speed was not causal, and cite the case of *Clark v. McCarthy* (1933), 210 Wis. 631, 635, 246 N. W. 326, in support of that claim. It is clear, however, from the *Clark* and subsequent decisions that excessive speed may be causal where it prevents or retards a driver from avoiding danger after he sees it. *Jewell v. Schmidt* (1957), 1 Wis. (2d) 241, 83 N. W. (2d) 487; *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 252, 101 N. W. (2d) 83.

There was testimony in this case that when Korleski first saw Lane, he glanced in his rear-view mirror because of his concern about the fact that Opperman was following him closely and might be endangered if Korleski applied his brakes too suddenly. We think that a jury might properly find that if the two cars, by prearrangement, were traveling too close to each other, an otherwise lawful speed of 65 miles per hour would, nevertheless, be excessive because of the circumstances.

Even, however, if the evidence would support a finding of causal negligence on Korleski's part, both as to management and control and as to speed, we doubt, at least, whether

an apportionment of 50 per cent of the causal negligence to plaintiff Korleski is proper and fair under these circumstances.

One other matter appearing in the record suggests that the jury may have been led to believe that Korleski's speed was far greater than the evidence discloses and to have been influenced by this supposition in making the apportionment of negligence. In the opening statement, one of the defense attorneys said:

"I think that we are going to show you beyond question that shortly before this accident happened, Mr. Korleski had been to at least two different garages with a certain part of his automobile and complained that this part did not work because he was unable to get his car over 100 miles an hour."

There was an objection and the court ordered the jury to disregard the statement, although the court then denied a motion for a mistrial. While no evidence supported this statement, there was evidence which may have brought it back into the minds of the jury, notwithstanding the judge's direction to disregard it, and there was argument made to the jury after the close of the testimony to the effect that Korleski and Opperman were using the highway for a "race ground." On cross-examination of Korleski, counsel inquired whether Korleski had not complained at the garage about the functioning of his carburetor or coil the morning of the day of the accident. Korleski first testified that his complaint at the garage was the week before the accident, but then said he was not sure, although it seemed to him it was not the same day. Later, a mechanic testified that on the morning of the day of the accident, Korleski had been at the garage, complaining "that his car wouldn't start and he couldn't get no speed out of it." The mechanic removed the coil, but was unable to locate a coil tester and Korleski

left, saying that he would fix the coil himself. Evidently counsel felt that he could properly show by this evidence that on the day of the accident Korleski had a reason to test his car for speed or for some other condition not related to the speedometer, and thus to impeach Korleski's testimony that he was testing the speedometer at a legal speed. Probably the trial court was within its discretion in admitting the testimony, upon this theory, but the apportionment of 50 per cent of the causal negligence to plaintiff very strongly suggests to us that there remained in the minds of the jury a prejudicial influence from the portion of the opening statement above quoted.

Consequently we exercise our discretion to order a new trial. Because, as previously noted, the damages assessed for personal injuries appeared to both the trial court and ourselves as very low, the new trial should extend to the issue of damages.

*By the Court.*—Judgment reversed; cause remanded for a new trial.