412 P.2d 615

EFCO DISTRIBUTING, INC., a corporation, Plaintiff and Appellant,

v.

Clifford PERRIN, dba Perrin Floor Coverings, Defendant and Respondent.

No. 10433.

Supreme Court of Utah.

March 28, 1966.

Allen H. Tibbals, Salt Lake City, for appellant.

Richard W. Brann, Ogden, for respondent.

CROCKETT, Justice.

Plaintiff seeks to overturn the verdict of a jury which refused to award damages for breach of contract by the defendant in failing to order out certain carpetings and floor coverings listed in what is termed a "purchase order."

The principal dispute between the parties was whether the "purchase order" constituted a binding contract. In submitting the case to the jury, the trial court accepted the plaintiff's position and assumed

that it was. He instructed the jury to determine whether the defendant had breached the contract; and if so, the damages suffered by the plaintiff.

The jurors returned their verdict:

We, the jurors impaneled in the above case, find the issues in favor of the plaintiff and against the defendant and assess damages in the sum of $ <u>NONE.</u>

Quite understandably, the plaintiff was unhappy about the failure of the jury to award any damages and moved for a judgment notwithstanding the verdict, or that failing, a new trial. Upon denial of these motions, this appeal was taken.

In surveying the overall situation as to what happened in this case, we think it is of some interest to observe that despite the assumption of the trial court in submitting the issues to the jury, and despite the earnestness and undoubted sincerity of plaintiff's counsel in contending that there was a binding contract to purchase carpeting, arriving at a conclusion as to just what this contract bound the parties to do is not without some difficulty. It is true that defendant had indicated to the plaintiff a desire to purchase carpetings for several jobs, and that he obtained from plaintiff an assurance of "price protection" on them for the period of one year. But from the plaintiff's initial complaint in this action it is plainly indicated that there was not a definite understanding as to certain important facts about the transaction, including the amount of the shipments, the type of carpeting, the colors, and the time and place of delivery. That complaint states that:

\* \* \* the damage cannot be ascertained until the defendant is compelled to account for the type, style and color of the product selected to be installed in the various jobs represented by the purchase order referred to.

\*  \*  \*  \*  \*  \*

\* \* \* The factory [plaintiff represents Robbins Floor Products, Inc.] \* \* \* is prepared to utilize its productive capacity to furnish the material necessary to complete the order \* \* \* defendant should be compelled to account for the product to be utilized on the respective projects.

and prays that the defendant

\* \* \* be compelled to disclose to the plaintiff the quantity and type of product used, as well as the color, to ascertain the price of the merchandise which would be delivered \* \* \* and upon ascertainment of the quantities, type and color to award the plaintiff judgment. \* \* \*

■ It is generally held that in order to be a binding contract the minds of the parties must have arrived at a sufficiently definite understanding as to terms that the parties know what they are bound to

do.[1] Nevertheless, inasmuch as there is no cross-appeal on that issue, we accept the trial court's assumption that there was a contract definite enough to be susceptible of performance and proceed to a consideration of the issue raised by plaintiff: that the evidence is such as to compel a finding of substantial damages notwithstanding the verdict of the jury to the contrary.

In this case, as is not uncommon, the picture seems to be either all white or all black, depending upon which side one is listening to. The plaintiff's case rests upon the evidence given by its president-manager, Mr. Ralph M. Evans. It was in substance that if the defendant Perrin had ordered the carpetings for the jobs listed his company would have realized certain profits therefrom. The amount would have depended upon the colors used and the quantity required in the shipments. On some colors the profit margin is less; and shipping charges would have been higher in smaller quantities. Thus depending upon those factors, the profit to be realized would have been up to 6,000 plus dollars. In view of the jury verdict and our decision upholding it, the detailed figures are not of material importance here. Plaintiff argues the credibility of the evidence given by Mr. Evans, particularly his candor in admitting the greater costs for some colors and the additional freight costs which would have resulted if the carpet had been ordered in small shipments.

As opposed to this, in urging that the evidence is not such as to compel a finding of damages, the defendant points to the uncertainty of what he was required to do as reflected in the purchase order and to these additional frailties in the plaintiff's case: he contends that Mr. Evans' testimony is obviously so suffused with self-interest that the jury was not obliged to accept it; that he arbitrarily assumed a profit would be made based upon a simple computation of sale price less purchase price, without spelling out or being willing to spell out a complete picture as to the cost of doing business and a method of determining what the actual net profits, if any, would have been on the sale and delivery of these carpets; and further, did not include the fact that the defendant continued to purchase such carpeting as he desired and required from the plaintiff.

▮▮ These contentions invite consideration of the basic problem as to just how much credit should be given to the verdict of a jury. We observe aside that in a criminal case, where the state seeks to put in jeopardy a person's life or liberty, a verdict for the defendant is incontestable regardless of however strong the evidence for conviction may be. The prerogative of the jury in that circumstance is absolute.

---

1. See Valcarce v. Bitters, 12 Utah 2d 61, 362 P.2d 427.

But we concede the correctness of plaintiff's position that this is not true in civil matters, which only involve disputes over property rights. Notwithstanding the admitted virtues of the jury system, it must be recognized that as in all human institutions, juries are subject to error. For a jury verdict to be regarded as completely beyond control or correction would permit the jury itself in some instances to be an instrument of despotic action rather than of the law and order it is purposed to preserve. For this reason it is essential that there exist in the court supervisory authority to rectify mistakes.

■ If it clearly appears that there has been a miscarriage of justice because the jury has refused to accept credible, uncontradicted evidence where there is no rational basis for rejecting it, or it is plain to be seen that the jury has acted under a misconception of proven facts, or has misapplied or disregarded the law, or where it appears that the verdict was the result of passion and prejudice, it is both the prerogative and the duty of the court to set aside the verdict and grant a new trial. This does not have the effect of depriving a party of a fair trial by jury, but in reality is a safeguard to assure it.

■ Notwithstanding this recognition of the possibility of error and the means of correcting it, unless some such error or impropriety as just stated is clearly shown, the verdict of the jury should stand. We have heretofore recited the values and the importance of trial by jury.[2] It provides a means of protection of individual rights and of redress against any form of injustice, real or imagined, by an appeal to a group of ordinary citizens, as distinguished from being compelled to submit to any other authority. This method of settling disputes is the leaven in our system of law and justice which keeps it close to the people who are the ultimate source of power, both in the creation and in the enforcement of the law. For these reasons it is properly regarded an essential adjunct to and in harmony with our whole democratic system which the courts have taken care and exercised restraint to safeguard.

■ Consistent with that viewpoint, when the parties have had the opportunity of presenting their evidence and arguments concerning their dispute to the jury, the judgment of the jury should be allowed to swing through a wide arc within the limits of how reasonable minds might see the situation; and the court should not upset a verdict merely because it may disagree. If it did so, the right of trial by jury would be effectively abrogated and the trial may as well be to the court

2. See statement in Stickle v. Union P. R. R. Co., 122 Utah 477, 251 P.2d 867; Joseph v. W. H. Groves Latter Day Saints Hospital, 10 Utah 2d 94, 348 P.2d 935; Bowden v. Denver & R. G. W. R. R. Co., 3 Utah 2d 444, 286 P.2d 240.

in the first place. The court itself must thus find and follow a rational policy in the middle ground between permitting a jury to be completely arbitrary and unjust where there is no reasonable basis in fact or law for its action on the one hand, and on the other; of himself being arbitrary by nullifying the jury's judgment merely because it is not in accord with his own.[3] In this instance the trial court did not do so but refused to grant a new trial which, as this court has heretofore indicated, in effect places a further stamp of approval on the verdict and enjoins upon the appellate court additional reluctance in disturbing it.[4]

██ We are obliged to consider the total picture as presented by the evidence in the light most favorable to the contentions of the defendant hereinabove recited and to the jury verdict supporting his position. There are certain further observations to be noted which have a bearing thereon. It is fundamental that it is the exclusive prerogative of the jury to judge the credibility of witnesses. This focuses attention upon the testimony of plaintiff's president-manager, who of course had a high degree of self-interest.

In the recent case of Holland v. Brown[5] the plaintiff's claim for recovery likewise was based upon the testimony of the plaintiff-manager. We stated therein,

> His self-interest may be a sufficient basis for [the jury] rejecting it; and furthermore, they are entitled to judge it in the light of their experience in the everyday affairs of life. This may well have included some legitimate doubts as to the loss of profits plaintiff claims to have sustained * * *. It is plainly apparent that they were not satisfied by the necessary preponderance of evidence that plaintiff suffered any actual loss and consequently awarded him damages of only $1.00. Considering all of the attendant factors, this appears to be within the limits of what reasonable minds might conclude under the circumstances.

That closely analogous case has considerable persuasive force here. It is also of some significance that this is not a situation where the plaintiff delivered materials to the defendant for which he refused to pay, but the plaintiff's claim is based on an anticipated profit *if* the contemplated transaction had been carried out.

██ On the basis of the discussion herein, and consistent with the principle that in doubtful cases the doubt should be resolved in favor of safeguarding the right of trial

3. See Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822; Bowden v. Denver & R. G. W. R. R. Co., footnote 2 above.
4. See Geary v. Cain, 69 Utah 340, 255 P. 416; Schneider v. Suhrmann's, etc., 8

Utah 2d 35, 327 P.2d 822; and Gordon v. Provo City, 15 Utah 2d 287, 391 P.2d 430.

5. 15 Utah 2d 422, 394 P.2d 77.

by jury, we have concluded that the jury verdict and the judgment of the trial court thereon should not be disturbed.

Affirmed. Costs to defendant (respondent)

HENRIOD, C. J., and McDONOUGH, WADE, and CALLISTER, JJ., concur.