472 P.2d 942

**Lawrence W. BROWN, Plaintiff and Respondent,**

v.

**Charles Fred JOHNSON and Royal Baking Company, Defendants and Appellants.**

No. 11899.

Supreme Court of Utah.

July 29, 1970.

H. Wayne Wadsworth, Hanson & Baldwin, Salt Lake City, for defendants and appellants.

Joel M. Allred, Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

This appeal is in two parts: first, from the ruling of the trial court in granting plaintiff's motion for a new trial after the jury verdict for defendants, and, second, from a jury verdict in favor of plaintiff in the second trial. The defendants contend that the two verdicts being opposite show conclusively that there were jury questions and, therefore, the court should have refused to grant a motion for a new trial after an errorless first trial.

The facts of the case are not in substantial dispute. On a wintry day the defendant Johnson was following plaintiff in a westerly direction down a winding, two-lane canyon road awaiting an opportunity to pass him. There were patches of snow and ice on the road at the time. Because of the curves in the road, the defendant could see the plaintiff about one-half of the time as he followed down the canyon for a distance of approximately a mile before a rear-end collision occurred. The plaintiff never did see the defendants' truck until after the impact.

The plaintiff was traveling at a speed between 20 and 25 miles per hour, and as he rounded a curve, he noticed a small dog approximately 35 yards ahead of him near the right-hand edge of the pavement. He slowed his car to a speed of approximately 10 miles per hour, and when he was near the dog, it veered from its line of travel as if to cross the road. The plaintiff then applied his brakes a second time, slowing his car to a speed of approximately five miles per hour, at which time he was struck in the rear by the truck driven by the defendant Johnson.

The movements of Mr. Johnson and his reasons for making them were these: He had driven the route about 1,000 times and knew the road well. He knew there was a straight strip of road just around the curve where he could pass plaintiff's car, and he made his approach to pass as soon

as he had a view down the straight part of the canyon. At the time when his front bumper was a few feet behind the rear bumper of plaintiff's car and to the left of the center of the highway, his right rear wheel was still in the westbound lane of travel. At that time Mr. Johnson observed the brake lights of plaintiff's car flash on. He did not know what caused the plaintiff to apply the brakes, as he could not or did not see the dog. Fearing that plaintiff might skid across the center of the icy road, he pulled back into the westbound lane of traffic with the front of his truck only a couple of feet behind plaintiff's automobile. When plaintiff slowed the second time, the collision occurred.

Upon these facts, opposite verdicts were rendered by the two juries.

■ The contention that the court erred in granting a new trial is not well based. In the early Utah case of Newton v. Brown, 2 Utah 126, an appeal was taken from the granting of plaintiff's motion for a new trial, and in affirming the lower court, this court at pages 129 and 130 said:

> When the motion for a new trial is founded upon the insufficiency of the evidence to support the verdict and judgment, a large discretion is vested in the court below, in refusing or granting the motion. It must plainly appear that this discretion has been abused before the Appellate Court will interfere with this

action in granting the motion upon this ground.

> In the case before us, the record shows that the testimony was, to say the least, very conflicting, and in such cases the granting or refusing a new trial rests peculiarly in the discretion of the court. [Citations omitted.]

There have been a number of Utah cases since the Newton case holding to the same effect. These cases are referred to in King v. Union Pac. R. Co., 117 Utah 40, 212 P.2d 692 (1949). In that case, as here, the court granted a new trial after the first jury rendered a verdict in favor of the defendant. The defendant there argued that the preservation of the right to trial by jury requires the trial court in most cases to uphold the verdict of the jury when it is supported by substantial competent evidence, even though the record may be such that the jury well might have found otherwise. In affirming the ruling granting the new trial, this court at page 48 of the Utah Reports quoted from the case of Nelson v. Angelus Hospital Ass'n of Los Angeles, 23 Cal.App.2d 71, 72 P.2d 169, 171, as follows:

> The law is well established that, on consideration of a motion for new trial on the ground of insufficiency of the evidence to justify the verdict or decision, a trial court is not particularly concerned with the fact (if it so appear) that * * * the evidence [is] "con-

flicting." To the contrary, notwithstanding any such conflict, or even though the apparent weight of the evidence should be in support of the "verdict or decision," since it is the personal duty of the trial judge to weigh and to consider the evidence and to reach a just conclusion thereon, if he be satisfied that the verdict or decision in question is not in fact supported by the evidence, or that it is contrary to the weight of the evidence, he is not only authorized, but it is his bounden duty to grant the motion for new trial. 20 Cal.Jur. 117, 118, and authorities there cited. In such a situation, on appeal from the order, all that is required to sustain it is the fact that the record discloses substantial evidence in support of the conclusion that has been reached by the trial court in that respect.

In Marshall v. Ogden Union Ry. & Depot Co., 118 Utah 161, 221 P.2d 868 (1950), the trial court granted the *defendant's* motion for a new trial after a verdict for plaintiff, and the second jury returned a verdict in favor of defendant for no cause of action. The plaintiff there appealed, claiming the trial court abused its discretion in granting the motion for a new trial. In affirming the lower court's ruling granting the new trial, this court at page 164 of the Utah Reports said:

The granting or denying of a motion for a new trial is within the sound dis-

cretion of the trial court. When a trial court grants a new trial we will not disturb its action unless it is manifestly apparent that the court has abused its discretion. *Abuse of discretion does not occur when there is a reasonable basis for the court's action and there is a probability that a different result will ensue.* * * * [Emphasis added.]

In view of the foregoing, we hold that in the instant case the trial court did not err in granting the motion for a new trial.

■ The defendants herein assign errors at the second trial in that the court refused to instruct the jury that nothing could be awarded for possible future surgery and in accepting a revised verdict from the jury. They apparently think that unless a plaintiff has over 50 percent chance of having surgery, no award can be made therefor. The doctor testified regarding the need by the plaintiff for future surgery as follows:

Q. How would you characterize that chance? Can you ascribe a percentage to it?

A. Yes. I think Larry has about a 15 per cent chance of requiring surgery. This is what we have found on the basis of studies of following people with similar injuries over a long period of time. Fifteen per cent will eventually require surgery.

In order to recover damages for any injury or harm, the plaintiff must convince the jury by a preponderance of the evidence that the injury has been or will be sustained. This does not mean that the chances of sustaining the harm must be over 50 percent. It means that the jury must be convinced by a preponderance of the evidence that there is a definite risk of harm, and when so convinced, the jury will evaluate that risk.

Here the preponderance of the evidence was to the effect that 15 out of each 100 people in the condition of the plaintiff would positively require future surgery. There is nothing speculative about it. The percentage is certain. The value to be placed upon that percentage is for the jury to determine. If the law were as defendants hope it is and there were 100 cases like the instant one, the jury would know that 15 of the plaintiffs would surely require the surgery and be entitled to recover therefor, yet none of them could recover because no one plaintiff could convince the jury that he himself had more than a 50 percent chance of requiring the surgery. This reasoning would give an undeserved advantage to the wrongdoing defendant.

■ In the second case the judge instructed the jury that special damages could not exceed the sum of $377.50. The jury returned a verdict as follows:

General ......... $ 1,700.00
Special ......... 10,000.00
Total .. $11,700.00

There was clearly a mistake made, and the judge directed the jury as follows:

Ladies and gentlemen of the jury, the Court, in examining the verdict returned by you, is of the opinion that there appears on the face of it an obvious error in view of the instructions given to you. I'm going to ask you to return to the jury room and reconsider your verdict in lieu of those instructions. There are 37 of them. I do see an obvious error. I'm going to take the liberty, without discussing it with counsel, to ask you when you go back and re-deliberate and seeing if there is an obvious error in this verdict, to particularly pay attention to instructions with regard to damages. Look at those instructions, please, and I will ask you to go with the bailiff back to the jury room and to do that for me, will you, please, and then of course you return the verdict as you find it after you have done what I have asked you to do.

The jury retired and in a few moments returned with the verdict corrected as follows:

|  |  | 11,322.50 |
| General ........ | $ ~~1,700.00~~ | ~~11,332.50~~ |
| Special ........ | ~~10,000.00~~ | 377.50 |
| Total .. | $11,700.00 | |

The defendants complain because they say the jury did not take time to re-deliberate on the issues. Rule 47(r), U.R.C.P., provides that "if the verdict rendered is informal or insufficient, it may be corrected by the jury under the advice of the court,

or the jury may be sent out again." The trial judge elected to send the jury out to correct the verdict, and there was no error in doing so. Jorgensen v. Gonzales, 14 Utah 2d 330, 383 P.2d 934 (1963).

■ The error was undoubtedly induced by failure on the part of the jury to understand the difference between the terms "general damage" and "special damage." It is obvious that after deliberating on the evidence, the jury had arrived at a verdict of $11,700, and so the only amount of time which they would require to correct the verdict would be that which would enable them to adjust the figures between general and special damages.[1]

We see no prejudicial error in any of the rulings in this matter, and we, therefore, affirm the judgment. Costs are awarded to the respondent.

---

1. On the hearing of the motion for a new trial, the plaintiff submitted an affidavit from one of the jurors which, in part, stated:

\* \* \* \* \*

3. That the jury awarded the Plaintiff the sum of $11,700.00 which was broken down as follows:

A. $10,000.00 pain and suffering
B. $ 1,255.00 lost wages
C. $ 377.50 medical expenses
D. $ 65.00 air fare to Norfolk, Virginia

$11,697.50 TOTAL

4. That the items for lost wages, medical expenses, and air fare were added together totaling $1,697.50, rounded off to $1,700.00, and treated as special damages; that the $1,700.00 was inserted in the general damage section of the verdict form and the $10,000.00 for pain and suffering was inserted in the special damage section, the total being $11,700.00.

5. That the jury, upon instruction from the Court that there was an error in the verdict, retired to the jury room; that the special damage figure was changed to $377.50, the amount of the medical expenses; that the air fare and lost wages were added to the item for pain and suffering and inserted in the general damage section, the total of the verdict remaining at $11,700.00.

The trial court refused to consider the above affidavit on the ground that it was an attempt on the part of a juror to impeach the verdict. While jurors may not by affidavit or otherwise *impeach* their verdict, they may give proof to explain it. In Moulton v. Staats, et al, 83 Utah 197, 206, 27 P.2d 455, 459 (1933), this court said:

\* \* \* In the order the trial court not only denied and overruled the motion to amend and modify the judgment, but also ordered that the affidavit of the jurors, as aforesaid, be stricken on the ground that it impeached their own verdict.

"The general rule, that the statements of jurors will not be received to establish their own misconduct, or to impeach their verdict, does not prevent the reception of their evidence as to what really was the verdict agreed on, in order to prove that, through mistake or otherwise, it has not been correctly expressed, as the agreement reached by the jury, and not the written paper filed, is the verdict; and a showing that the writing is incorrect is not an impeachment of the verdict itself." 27 R.C.L. 900, § 74.

"Affidavits of jurors are admissible to show that the verdict, as received and entered of record, by reason of a mistake, does not embody the true finding of the jury." 38 Cyc. 1903, and citations.

See also Freid v. McGrath, 77 U.S.App. D.C. 385, 135 F.2d 833, 834 (1943); Young v. U. S., 163 F.2d 187, 189 (1947); and the annotation in 18 A.L.R.3d at page 1137.

**394**

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (concurring in the result and dissenting).

I concur in the result, but dissent from the majority opinion's unnecessary and obiter observations concerning speculative damages. The court instructed the jury against awarding speculative damages. There is no evidence that would indicate that the jury did not follow the instructions as they were correctly given by the trial judge.

At the conclusion of the evidence at the second trial, defendants requested that the jury be instructed that they could not award damages for any possible future surgery, and urge error in failure to give their requested instruction to that effect. A review of the record reveals that the court amply instructed the jury concerning speculative or future damages, as follows:

> If you find the issues in favor of the plaintiff * * * it will be your duty to award the plaintiff such damages * * * *he has sustained* as a proximate result of defendant's negligence. However, the plaintiff is *not entitled to recover for any speculative damages*, by which term is meant compensations for detriment, which, *although possible, is remote, conjectural or speculative.*

Furthermore, the court required that the damages for medical detriments were to be limited to those "actually" incurred and must not exceed the sum of $377.50.

Without proof of the value of any loss related to future surgery, and in the absence of any jury instruction specifically allowing compensation for future surgery, coupled with a lucid instruction against any type of speculative damages, it must be assumed that the jurors understood that no recovery for medical expenses incident to future surgery could be awarded, and consequently, followed the submitted instructions. Furthermore, on appeal, the court is "obliged to indulge the assumption that they followed the instructions given by the court," as stated in the concurrence of Mr. Justice Crockett, in Moore v. Denver & Rio Grande Western Railroad Co.[1] The jurors's affidavit quoted by the majority opinion in Footnote 1, (which is unnecessary and only confusing as to use of juror's affidavit as to what happens in a jury room), established this very point. The affidavit delineates the specific categories in which damages were divided; none reveals any inference of damages for future medical or surgical expenses. It is obvious (even from the majority opinion) that the entire fishing expedition urging that 15 chances out of 100 is not speculation, is quite immaterial to this appeal.

1. 4 Utah 2d 255, 292 P.2d 849 (1956).

The parade of horrors attendant not infrequently in tort litigation is apparent. Any lawyer worth his salt could lead most knowledgeable medical witnesses down the primrose path to the formula interrogatory: "Doctor, would you say that there might or would be a 10-15% chance that the plaintiff will need further medical treatment some time in his life relating to his injury?" Few medical witnesses could resist answering anything but "yes" to that magic formula. As was emphasized by the majority opinion it was just this kind of answer elicited by counsel in the instant case: "Yes, *I think* Larry has *about a 15 per cent chance* of requiring surgery." It is a matter of common knowledge and belief that even to the medico-neophyte most medical diagnoses and prognostications are equivocal. Dr. Clegg, an eminent orthopedic surgeon recognized this in the *Moore* case when he said, "In medicine, * * * we cannot come out definitely on things, very often and say absolutely * * * but we usually qualify our diagnosis."

I am aware of those cases which deny exclusion of a witness' testimony regarding pain and suffering endured or to be endured by a party merely because the witness qualifies his observation with words such as "probability," "possibility," or "belief." Picino v. Utah-Apeox Mining Co.; [2] Jackson v. Harries.[3] However, the issues regarding admissibility of testimony were not germane to this appeal. The *Picino* case is further distinguished in that the jury instructions regarding damages simply reminded the jury that in awarding general damages for pain and suffering, account could be taken of pain and suffering which evidence demonstrated that plaintiff would endure throughout his life. There was no instruction allowing the jury to guess about unproved specific future medical treatment.

As the majority opinion now stands it is a carte blanche sanction for an award of compensation to anyone that can find a doctor to answer "yes" to the "15 chances out of 100" formula. I believe the odds would appeal to the Las Vegas bookmaker.

I believe the dissertation about the admissibility of a seven to one odds damage situation, being quite unnecessary and but obiter,—not the law of the case,—should be eliminated from this decision in order not to encourage the existing disquietude among the bench and bar as to the speculative damage area. (All emphasis added.)

2.  52 Utah 338, 173 P. 900 (1918).

3.  65 Utah 282, 236 P. 234 (1925).