MARKEY, and another, Plaintiffs-Respondents, v. HAUCK, and others, Defendants-Appellants: STATE FARM MUTUAL INSURANCE COMPANY, Defendant.

*No. 781 (1974). Submitted on briefs April 12, 1976.— Decided June 14, 1976.*
(Also reported in 242 N.W. 2d 914.)

For the appellants the cause was submitted on the briefs of *Roy S. Wilcox* and *Wilcox & Wilcox* of Eau Claire.

For the respondents the cause was submitted on the brief of *William A. Adler* and *Adler, La Fave & Johnson* of Eau Claire.

DAY, J. The order appealed from grants plaintiffs' motion for a new trial on the issue of negligence, following a jury verdict finding the defendants-appellants not negligent. The principal issues on appeal are whether the trial court erred in finding the jury's verdict to be against the great weight and clear preponderance of the evidence, and whether the new trial granted should cover damages as well as negligence.

On January 11, 1972, defendants David Hauck, Mary Lou Hauck, his wife, and Margaret Allen drove in Margaret Allen's automobile from their home in Minneapolis to visit a hospitalized friend in Eau Claire. The Hauck's two-year-old son, Brian, accompanied them. At the hospital they met Mr. Hauck's brother, Jerry. The Allen car and Jerry Hauck's car began the return trip to Minneapolis together. Jerry Hauck pulled into a gas station for fuel and the Allen car, driven by David Hauck, pulled in behind him, stopping a distance of from three to five feet behind Jerry Hauck's vehicle. Plaintiff Michael Markey, a gas station attendant, began filling Jerry Hauck's automobile. He

crouched behind it to reach the fuel tank opening but was visible to occupants of the Allen car.

David Hauck got out of the Allen car to make a purchase, leaving the engine running at Ms. Allen's request, because it was "bitterly cold." He did not set the parking brake. Ms. Allen was seated in the front seat on the passenger's side while Ms. Hauck and Brian were in the rear seat. Brian indicated he wanted to go into the front seat and, as was his custom, started climbing over the seat back at a point somewhat to the left of the center of the car. Ms. Allen twisted to her left and supported Brian's shoulders. As he came over the seat, Brian's lower body straightened out to accomplish a roll over the seat back. Although neither Ms. Allen nor Ms. Hauck saw Brian's foot strike the gearshift lever behind the steering wheel, they agreed that this must have happened, moving the lever down from the "park" to the "drive" position. The car started moving forward and struck Michael Markey in his lower back. Ms. Hauck reached over the seat and returned the gearshift lever to the "park" position. Ms. Allen started to move her foot to the brake but testified that, encumbered by her winter clothing and the child, she did not get it over the transmission hump before Ms. Hauck had reached the gearshift.

Mr. Markey testified that he had felt the Allen car knock him off his feet and push him into contact with the trunk and trailer hitch of the Jerry Hauck automobile, and that as he was pushed into the Hauck car he could "hear the engine [of the Allen car] revving up and . . . the tires breaking loose on the pavement." Neither Ms. Allen nor Ms. Hauck recalled hearing these sounds.

At the time of the accident Michael Markey was a 17-year-old high school student earning $1.60 per hour for part-time work at the gas station. He was athletically

active—a state champion archer, among other activities —but before the accident had suffered recurring pain in his back during the summer and fall of 1971 for which he was treated by an osteopath, Dr. Donald R. Bartingale, five times. Prior to that he had strained his back playing football and had been treated by either an osteopath or a chiropractor. Dr. Bartingale testified that Markey had told him of chronic pain in his upper back over a period of years. Dr. Bartingale's examination disclosed a "sacroiliac strain" of the lower back.

After the accident Markey spent a week in the hospital suffering from cuts and bruises, a hairline fracture of his left arm, and a severe strain in the lower thoracic and lumbar areas of his back. An orthopedic specialist was consulted who diagnosed a "possible sprain" to the back and recommended rest. Markey was released from the hospital having made a "good" recovery, and never returned to the hospital or to that particular orthopedic surgeon.

Markey stayed at home, barely able to walk, for a couple of weeks before returning to school. In February, 1972, he began a new series of forty visits to Dr. Bartingale that lasted for a period of 17 months. The doctor found that the muscles of the lower back were "ropey" and "spastic" and commenced heat, microwave, and manipulative therapy, and intermittent traction.

Markey returned to his gas station job for a few weeks in April, 1972, but his back continued to bother him and his family was required to take him home and put him to bed. He was occasionally unable to perform basic motions—for example, getting into or out of a shower or of an automobile. His sporting activities were eliminated. Dr. Bartingale sent Markey to another orthopedic surgeon who was unable to find any medical reason for the lower back pain.

After finishing high school Markey spent June, 1972, at a school in North Carolina learning the operation of heavy construction equipment. His pain continued when he was required to be on his feet for any period. He returned to Wisconsin and attempted to resume his gas station work in August; but the back pain returned and he was unable to continue. In September he started work as a construction equipment operator at a wage in excess of $8.00/hour. From that point he was employed more or less continually in that capacity, allowing for the seasonal nature of the construction business. His back continued to bother him and made any athletic activities difficult if not impossible.

After his return from North Carolina and again a year later, Markey made visits to a neurological specialist in Marshfield, Dr. Francis Kruse, Jr., who performed a number of tests. He found that Markey did not suffer from any pathological injury and had the full range of movement in his back, although he did suffer subjectively found pain at the extremes of movement of his back and legs resulting from strain of the muscle tissue in his back. This pain will continue permanently, according to Dr. Kruse, because even when the muscles heal, residual scar tissue will make them stiff and sore. Markey's activities will not be limited, but he will experience discomfort.

The jury returned a verdict finding that none of the three defendants had been negligent and assessed damages at $1,678.40 for loss of wages and $7,300 for pain and suffering. Combined with the court-determined medical expenses of $1,110.10, the total damages were $10,088.50. During its deliberations the jury requested a rereading of the instruction defining negligence.

Plaintiffs made motions after verdict for, among other things, a new trial because the verdict was contrary to the weight of the evidence and because the damages were

inadequate. The trial court determined that (1) a new trial should be granted on the issue of negligence because the verdict was contrary to the greater weight of the evidence but that (2) the damages as found by the jury were not inadequate and were sustained by the evidence, and should not be retried. Defendants have appealed from the order for a new trial as to negligence and plaintiffs have cross-appealed from the denial of a new trial as to damages.

## Negligence.

Defendants concede that the trial court may order a new trial in the interest of justice, pursuant to sec. 270.49 (2), Stats.,[1] where the jury's verdict is contrary to the great weight and clear preponderance of the evidence. *First Wisconsin Land Corp. v. Bechtel Corp.* (1975), 70 Wis. 2d 455, 462, 235 N. W. 2d 288. Such an

---

[1] "270.49 **Motion for new trial.** (1) A party may move to set aside a verdict and for a new trial because of errors in the trial or because the verdict is contrary to law or to the evidence, or for excessive or inadequate damages or in the interest of justice; but such motion must be made and heard within 2 months after the verdict is rendered, unless the court by order made before its expiration extends such time for cause. Such motion, if not decided within the time allowed therefor, shall be deemed overruled. In case judgment is entered without deciding a pending motion for a new trial, the supreme court may direct the trial court to determine such motion within 2 months after filing the remittitur in the trial court.

"(2) Every order granting a new trial shall specify the grounds therefor. In the absence of such specification, the order shall be deemed granted for error on the trial. No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein or the memorandum decision setting forth such reasons is incorporated by reference in such order. The court may grant or deny costs to either party."

order rests in the discretion of the trial court and will not be reversed unless it is clearly an abuse of that discretion. *McPhillips v. Blomgren* (1966), 30 Wis. 2d 134, 139, 140 N. W. 2d 267; *Behning v. Star Fireworks Mfg. Co.* (1973), 57 Wis. 2d 183, 186, 203 N. W. 2d 655. The trial court must set forth its reasons for concluding that the jury's findings were inconsistent with the evidence and that justice has miscarried, *Tuschel v. Haasch* (1970), 46 Wis. 2d 130, 136, 137, 174 N. W. 2d 497; *Behning, supra.* The trial court cannot simply substitute its judgment for that of the jury or find that a different jury might have reached a different result. *Bartell v. Luedtke* (1971), 52 Wis. 2d 372, 379, 190 N. W. 2d 145. However, this court on review will look for reasons to sustain, and not to reverse, the trial court; if only one of the several reasons advanced is sufficient, the trial court has not abused its discretion. *Hillstead v. Shaw* (1967), 34 Wis. 2d 643, 648, 150 N. W. 2d 313; *Loomans v. Milwaukee Mut. Ins. Co.* (1968), 38 Wis. 2d 656, 662, 158 N. W. 2d 318; *Just v. Misericordia Hospital* (1974), 61 Wis. 2d 574, 213 N. W. 2d 369.

■ The trial court's memorandum opinion found that, based on the essentially unconflicting testimony, justice had miscarried. The court was not prepared to find any of the defendants negligent as a matter of law, but did find that the relationships between the defendants and their knowledge of the situation were such that they must collectively be assigned the responsibility of foreseeing the accident. The trial court did not abuse its discretion by substituting its opinion for the jury's. The court specifically recognized the jury's difficulty in assigning fault to any one of the three individual defendants, but concluded that the great weight of the evidence as a whole indicated that the accident was negligently caused. We agree.

*Damages.*

Respondent Markey has cross-appealed from denial of his motion to include the issue of damages in the new trial. He does not argue that the damages are insufficient as a matter of law, in that they are not supported by credible evidence. He does argue that the jury's view of his damage claim was prejudiced by its contemporaneous determination that none of the defendants were negligent. The trial court found that the damage award was not inadequate as a matter of law and that it was not based on passion or prejudice. The trial court did not specifically mention the relationship of the damage findings to the no-negligence findings of the jury.

This court has long held that the scope of a new trial, and particularly the retrial of damage questions, is within the discretion of the trial court. *Just v. Misericordia Hospital, supra,* at pages 582, 583. In that case this court held that it was an abuse of discretion to order retrial of the damage issue where the only reason for a new trial related to causation.

Where a jury finds the defendant not negligent against the great weight of the evidence, inadequate damages which would not in themselves justify a retrial may be an issue in a new trial. *Mainz v. Lund* (1963), 18 Wis. 2d 633, 645, 119 N. W. 2d 334; *Korleski v. Lane* (1960), 10 Wis. 2d 163, 102 N. W. 2d 234. In the case before us, however, the damages are not inadequate in the sense contemplated by *Mainz* ($15,000 awarded for permanent severe brain damage to a four-year-old child) or in *Korleski* ($3,000 for massive permanent facial injuries), cases where the awards would not even cover medical expenses. Here the damages awarded, approximately $10,000, were in excess of the medical and lost-wage costs. There was also a considerable amount of

medical testimony of a preexisting back condition prior to the accident.

The trial court in this case determined that the jury's calculation of damages was not the product of passion or prejudice, a determination that is given great weight on review. *Dahl v. K-Mart* (1970), 46 Wis. 2d 605, 613, 176 N. W. 2d 342.

■ The difficulty of apportioning negligence among the three defendants here is obvious. It was reasonable for the court to conclude that the jury's failure to find negligence did not reflect any prejudice against the plaintiff and did not adversely affect its determination of damages. The trial court's conclusion that no retrial of the damage issue was necessary was not an abuse of its discretion.

*By the Court.*—Order affirmed.