**Beverly GODDARD, Plaintiff and Appellant,**

v.

**Grant A. HICKMAN, Defendant and Respondent.**

No. 18383.

Supreme Court of Utah.

May 1, 1984.

Ross C. Anderson, Salt Lake City, for plaintiff and appellant.

Elliott Williams, Salt Lake City, for defendant and respondent.

STEWART, Justice:

The plaintiff, Beverly Goddard, brought this medical malpractice case against the defendant, Dr. Grant Hickman, for negligence in performing a subcutaneous mastectomy on the plaintiff. A jury found for the plaintiff and awarded damages in the amount of $200,000. The trial court granted the defendant's motion for a new trial. From that order, the plaintiff appeals.

The defendant is a plastic surgeon practicing in Salt Lake City. In 1979, the plain-tiff went to the defendant because she had a lump in her left breast, some firmness in her right breast, and was worried that the lumps might be warning signs of breast cancer. A physical examination and information supplied by the defendant identified the following indications favoring surgery: (1) a lump in the plaintiff's left breast; (2) firmness in her right breast; (3) a history of breast cancer in the plaintiff's family; and (4) an unusual fear of cancer (cancerphobia). The defendant did not, however, perform any of the following diagnostic procedures: a biopsy of the breast tissue; an x-ray mammogram; a xeroxmammogram; or a thermal mammogram. All these procedures were known to the defendant and available in the Salt Lake community at that time.

Based on the above indications, the defendant recommended to the plaintiff that she undergo a subcutaneous mastectomy of both breasts, which would remove approximately 90% of the breast tissue and replace it with a prosthetic implant. The purpose of the subcutaneous mastectomy is to reduce the possibility of future breast cancer in women who have a high risk of developing breast cancer.

The plaintiff agreed to the operation, and signed an informed consent form. After the operation, the plaintiff's breasts were disfigured and she experienced pain and firmness in her breasts. The defendant determined that the implants were defective, thus requiring a second operation. Again the plaintiff experienced pain and infection in her breasts. Ultimately three more operations were required to complete the procedure successfully. During this period, the plaintiff experienced continued physical discomfort, depression, and anguish over her condition.

The plaintiff sued the defendant, alleging that he was negligent in (1) failing to perform a biopsy or similar diagnostic procedure before recommending the surgery; (2) recommending a subcutaneous mastectomy; and (3) failing to inform her of the possible complications of the surgery. At trial, the testimony of the expert witnesses

was in conflict as to the standard of care for diagnosing the plaintiff's condition. The $200,000 jury verdict included both special and consequential damages.

The defendant moved for a judgment n.o.v. on the ground that no substantial evidence supported the verdict. Also, he moved for a new trial on all issues on the ground that the damage award was so excessive as to indicate that it was produced by passion or prejudice. The trial court denied the motion for a judgment n.o.v., but granted the motion for a new trial on the grounds that:

> [T]he damages awarded by the jury were grossly excessive indicating clearly that the verdict resulted from passion or prejudice, that the entire verdict is therefore tainted with improper motivation which denied the parties a fair trial and *that the jury misapplied or failed to take into account proven facts, misunderstood or disregarded the law and made findings clearly against the evidence.* [Emphasis added.]

The italicized language in the above quote is taken almost verbatim from a concurring opinion in *Holmes v. Nelson*, 7 Utah 2d 435, 441, 326 P.2d 722, 726 (1958). In that case this Court sustained the granting of a new trial pursuant to Utah R.Civ.P. 59(a)(6), "[i]nsufficiency of the evidence to justify the verdict ...." Given the source of the above italicized language, and the import of the words "the jury ... failed to take into account proven facts, ... and made findings clearly against the evidence," we conclude that a basis of the trial court's ruling in this case was Utah R.Civ.P. 59(a)(6).

■ A trial court has broad latitude in granting or denying a motion for a new trial, and will not be overturned on appeal absent a clear abuse of discretion. *E.g., Nelson v. Trujillo*, Utah, 657 P.2d 730 (1982); *Chournos v. D'Agnillo*, Utah, 642 P.2d 710 (1982); *Lembach v. Cox*, 639 P.2d 197 (1981). When a new trial is granted based on the weight of the evidence, the standard for reviewing the trial court's ruling is much narrower than the trial court's

standard in granting the new trial. The trial judge may grant a new trial only if the jury's verdict is so contrary to the manifest weight that the trial judge "cannot in good conscience permit it to stand." *Holmes v. Nelson*, 7 Utah 2d 435, 441, 326 P.2d 722, 726 (1958) (concurring opinion of Crockett and Wade, JJ.). *Accord Brown v. Johnson*, 24 Utah 2d 388, 391, 472 P.2d 942, 944 (1970); *Hyland v. St. Mark's Hospital*, 19 Utah 2d 134, 427 P.2d 736 (1967); *King v. Union Pacific Railroad Co.*, 117 Utah 40, 212 P.2d 692 (1949); 6A J. Moore, *Moore's Federal Practice* ¶ 59.08[5] (1983). *See also Efco Distributing, Inc. v. Perrin*, 17 Utah 2d 375, 412 P.2d 615 (1966).

■ Even though a trial judge may disagree with a verdict, mere disagreement is not sufficient reason to order a new trial. The power of a trial judge to order a new trial is to be used in those rare cases when a jury verdict is manifestly against the weight of the evidence. Because there is inherent tension between the right of a litigant to have a jury decide a case and the right of a trial judge to order a new trial in the interests of justice and because of the added expense and inconvenience of a new trial, the granting of "a new trial on an evidentiary basis under Rule 59(a)(6) should be exercised with forebearance." *Nelson v. Trujillo*, Utah, 657 P.2d 730, 732 (1982).

The standard of appellate review of an order for a new trial was recently stated in *Nelson v. Trujillo, supra:*

> Where the trial court has granted the motion for new trial, its decision will be sustained on appeal if the record contains "substantial competent evidence which would support a verdict for the [moving party]."

*Id.* at 732, *quoting King v. Union Pacific Railroad Co.*, 117 Utah 40, 53, 212 P.2d 692, 698 (1949) (emphasis deleted). *Accord Pollesche v. Transamerican Insurance Co.*, 27 Utah 2d 430, 497 P.2d 236 (1972); *Wellman v. Noble*, 12 Utah 2d 350, 366 P.2d 701 (1961). A different standard applies when the appeal is from a *denial* of a

motion for a new trial. *Nelson v. Trujillo, supra,* at 732.

We note at the outset that the jury verdict was amply supported by the evidence. Nevertheless, the defendant adduced substantial testimony which would have supported a verdict in his favor. The following evidence supported defendant's judgment to perform surgery. The plaintiff was very concerned about the possibility she might develop breast cancer. She testified that the cause of her concern was because she had a lump in her breast, and because she thought her grandmother had died of breast cancer. Before contacting the defendant, the plaintiff visited Dr. Brian Rasmussen. His notes of that visit state that plaintiff told him that "her grandmother had had breast cancer." In addition to visiting Dr. Rasmussen, the plaintiff visited Dr. John Upchurch and expressed the same fear of developing cancer.

The patient first visited the defendant, Dr. Hickman, on January 29, 1979. The plaintiff again related her concern about developing cancer. She told him that she had a lump and some pain in the left breast. Dr. Hickman verified the existence of the lump by examination, and also found firm tissue in the right breast.

The plaintiff also told Hickman, according to his testimony, that her grandmother died of breast cancer. On this point, Hickman's testimony was based on a typewritten patient record that he dictated on February 12, 1979. The dictated record also indicated that the plaintiff had told Hickman that biopsies had been performed on many benign tumors found in her mother's breasts.

The plaintiff's testimony substantiates in part Dr. Hickman's testimony. She testified that she was very concerned about the lump in her breast; that she went to Dr. Rasmussen and Dr. Upchurch, and then Dr. Hickman; and that during the course of the conversation, "he asked me about my family history and I told him that I thought my grandmother had died of breast cancer."

Two medical experts, Dr. Fairbanks and Dr. Dingman, testified that given the indications for surgery in this case, Dr. Hickman complied with the accepted standard of care practiced by plastic surgeons in this community in recommending surgery. When asked why he held this opinion, Dr. Fairbanks gave the following reasons:

[Dr. Hickman] had indications. He had a patient with a lump in her breast. He had a positive family history. He had cancerphobia. And, it is my opinion that a physician must take all of these things into consideration and do what he feels in his best judgment and training is in the patient's best interest. And it appears that that is what he did.

Dr. Dingman's opinion that Dr. Hickman had complied with the standard of care was based on a hypothetical, namely, that the plaintiff told Hickman that her grandmother had died of breast cancer; that her mother had repeated benign breast biopsies; and that a clinical examination indicated that the plaintiff had a lump on her left breast and firm tissue on her right breast. Dr. Fairbanks also testified that a biopsy of the breast tissue was not a required procedure, and that the defendant did not breach the standard of care by failing to do a biopsy or take a mammogram before recommending surgery.

Evidence of what information a patient should have to be able to give informed consent was given by the plaintiff's expert. He testified that a physician who performs a subcutaneous mastectomy conforms to the standard of care if the physician informed the patient of four possible complications: hematoma (bleeding), infection, capsule contracture (hardening) and skin necrosis (sloughing off of the skin). The defendant testified that he discussed the following possible complications with the plaintiff: hematoma, infection, capsule contracture, pain, implant leakage, and implant rejection. The defendant also told the plaintiff that if capsule contracture or implant leakage occurred, further operations might be necessary. Also, a consent form signed by the plaintiff was introduced

at trial which listed the following possible complications: inflammation, tenderness, swelling, discoloration, scar tissue, infection, and hematoma. Although necrosis was apparently not mentioned either by the defendant or in the consent form, it is not a complication that the plaintiff experienced.

■ The plaintiff relies on testimony that contradicts much of the foregoing testimony to support the proposition that the trial court abused its discretion in granting a new trial.[1] Conflicting evidence, however, does not prohibit the granting of a new trial. *Brown v. Johnson,* 24 Utah 2d 388, 472 P.2d 942 (1970); *King v. Union Pacific Railroad Co.,* 117 Utah 40, 212 P.2d 692 (1949). "The mere fact that the jury verdict is supported by substantial evidence sufficient to make a prima facie case and furnish a reasonable basis for their decision does not require that the trial court's order granting a new trial should be reversed." *Wellman v. Noble,* 12 Utah 2d 350, 353–54, 366 P.2d 701, 703 (1961).

The plaintiff also argues that the trial court should be reversed because it failed to "state any reasons for or cite anything in the record supporting its conclusions." The trial court's order, quoted earlier, states the statutory grounds for its decisions, which were (1) excessive damages indicating passion or prejudice (Utah R.Civ.P. 59(a)(5)), and (2) findings against the evidence, i.e., insufficiency of the evidence (Utah R.Civ.P. 59(a)(6)). The plaintiff argues, however, that the order should have been supported by detailed findings of fact. *See Markey v. Hauck,* 73 Wis.2d 165, 172, 242 N.W.2d 914, 917 (1976); *DeGroff v. Schmude,* 71 Wis.2d 554, 564, 238 N.W.2d 730, 735 (1976).

■ Without question, the making of findings would be good practice, 58 Am. Jur.2d *New Trial* § 214 (1971), particularly to an appellate court reviewing a motion for new trial which had been granted. However, the Utah Rules of Civil Procedure do not require findings. The Utah rules require only that if a court orders a new trial "of its own initiative," it shall "specify the grounds therefor" in its order. Utah R.Civ.P. 59(d). This requirement is met by specifying the general grounds provided in the Rules, as was done in this case. *Cf. Luther v. Howland,* 101 Idaho 373, 613 P.2d 666 (1980) (by statute, all orders for new trial must contain statutory grounds); *Mettee v. Urban Renewal Agency,* 219 Kan. 165, 547 P.2d 356 (1976) (same).

The plaintiff also argues an abuse of discretion by the trial court is evidenced by the statement in his order that the damage award was so excessive as to show that the jury acted out of "passion or prejudice." Utah R.Civ.P. 59(a)(5). The jury awarded the plaintiff $20,000 in special and consequential damages and $180,000 in general damages. Since we have decided that a new trial is sustainable under Utah R.Civ.P. 59(a)(6), we need not decide whether the grant of a new trial is also supported under Rule 59(a)(5). We do note, however, that in other malpractice cases involving breast surgery, general damage awards of approximately $200,000 or greater have been held not to be excessive. *See, e.g., Nelson v. Gaunt,* 125 Cal.App.3d 623, 178 Cal.Rptr. 167 (1981) ($450,000); *Kinikin v. Heupel,* Minn., 305 N.W.2d 589 (1981) ($600,000); *V. Mueller & Co. v. Corley,* Tex.App., 570 S.W.2d 140 (1978) ($170,000).

The plaintiff asserts, but does not raise as a point on appeal, that the trial judge "demonstrated his own bias against [plaintiff] and her legal claims throughout the trial." The plaintiff does not argue, however, that this alleged bias (which she documents in an appendix to her brief) is direct evidence of abuse of discretion. Except for a brief footnote, the plaintiff does not even argue the bias point in her brief.

■ The general rule concerning abuse of discretion is that "this [C]ourt will pre-

---

1. The plaintiff's expert witness vigorously disputed the testimony of the defendant's experts as to the proper standard of care in recommending the subcutaneous mastectomy procedure. And the plaintiff testified that the defendant had never told her that her breasts could become hard, painful or infected after surgery.

sume that the discretion of the trial court was properly exercised unless the record clearly shows the contrary." *State ex rel. Road Commission v. General Oil Co.*, 22 Utah 2d 60, 62, 448 P.2d 718, 719 (1968). The trial judge's rulings which have been raised as points on appeal do not provide a basis for reversing the order requiring a new trial.

The order granting the new trial is affirmed and the case remanded for further proceedings. Costs to respondents.

HALL, C.J., and OAKS and HOWE, JJ., concur.

DURHAM, Justice (Dissenting).

I dissent. I would reverse the trial court's granting of a new trial as constituting an abuse of discretion for the following reasons:

1. The defendant did not provide substantial competent testimony in support of a verdict in his favor.

2. The damages awarded by the jury were not so excessive as to indicate passion or prejudice.

3. The trial court failed either in the record or in its order to articulate the factual basis for its grant of a new trial.

4. The record sufficiently demonstrates the trial court's hostility to plaintiff's cause of action to overcome the presumption that its discretion was fairly exercised.

A physician's diagnosis demands the same duty of care as does the actual treatment of the patient. My review of the record satisfies me that a verdict for defendant would be inconsistent with the overwhelming weight of evidence that showed defendant breached his duty of care in recommending this drastic surgery.

The majority states that the testimony of expert witnesses was in conflict regarding the standard of care for diagnosing the plaintiff's condition as requiring a subcutaneous mastectomy. The opinion does not specify the nature of those conflicts, and my examination of the expert testimony leads to the conclusion that the experts were in substantial agreement on the standard of care. There was gross conflict, however, as to whether defendant complied with the standard.

Defendant's first expert to testify, Dr. Fairbanks, stated at trial that the following indications *collectively* provided a reasonable basis for the surgery: 1) a genetic predisposition for breast cancer; 2) a histologic showing (examination of tissue microscopically); 3) patient symptoms such as pain, chronic infection, silicone injection mastopathy; and 4) cancerphobia, particularly where there are multiple biopsies. Later Dr. Fairbanks departed somewhat from the standards he had testified to earlier and stated that a biopsy or mammogram was not a necessary step in the physician's diagnosis and that the defendant complied with the standard of care in the community. Aside from this inconsistent testimony as to whether a histologic showing is a necessary indication, the other necessary indications Dr. Fairbanks enumerated were not present.

The majority's summary suggests that the plaintiff told defendant there was a "history of breast cancer" in her family. The record is plain. The plaintiff told the defendant she *thought* her grandmother *might* have died of "cancer," but she did not know what kind, and her mother had fibrous breast tissue biopsied at least once with no malignancies. This is the extent of the medical history the defendant relied on in determining the plaintiff had a "genetic predisposition" for breast cancer. Dr. Rasmussen's notes are not relevant. The defendant never conferred with Dr. Rasmussen. Also, while defendant's typed record indicated that plaintiff's grandmother died of "breast cancer," his handwritten notes, taken during examination, merely stated "cancer." Plaintiff unsuccessfully tried to introduce at trial her grandmother's death certificate, which listed cause of death not as cancer of the breast, but of the cervix.

Plaintiff's alleged psychosomatic symptoms were unaccompanied by multiple biopsies, as Dr. Fairbanks testified should be present as part of the indication. Further-

more, plaintiff's "cancerphobia" was diagnosed by the defendant, a plastic surgeon, after a 45-minute visit with the patient, which included a physical examination and a discussion about how she would pay for the operation. Defendant made no attempt to clarify the nature of the plaintiff's "cancerphobia."

> One particularly crucial instance when failure to consult [a specialist] prior to operating—either by a general practitioner or a surgeon—should constitute negligence occurs when a patient requests an operation in order to satisfy a psychological need. Medical studies have revealed that some individuals create psychological illness and seek an operation to alleviate this psychoneurotic condition.

*Unnecessary Surgery: Doctor and Hospital Liability*, 61 Geo.L.J. 807, 813 (1973) (footnote omitted).

Plaintiff did not exhibit the symptoms Dr. Fairbanks testified might provide additional support for a diagnosis that the plaintiff had an unusual possibility of cancer in the future. To find support in Dr. Fairbanks' testimony for a verdict for the defendant, the jury would have had to ignore serious inconsistencies in his testimony and accept only his summary conclusion.

Defendant's second expert, Dr. Dingman, in concluding defendant met the accepted standard of care in recommending the surgery, merely responded to a hypothetical that was not supported by the facts of the case.

Defendant's own testimony further diminished support for a verdict in his favor. At one point, he testified that the *only* indication he relied on was the risk of cancer from plaintiff's grandmother. At another point in his testimony, he stated that he relied on plaintiff's having fibroadenoma, but he also admitted a physician cannot detect fibroadenoma by merely palpating a patient's breast, which was all he did in this case. Indeed, he testified that he told plaintiff she might return to another doctor to have a biopsy conducted to determine if she had fibroadenoma. Defendant also testified he would perform a subcutaneous

mastectomy on a 25-year-old woman *solely* because she feared cancer. Finally, two pathologists testified that an examination of plaintiff's breast tissue performed after surgery did not indicate that plaintiff had an unusual possibility of developing cancer in the future.

I would also reject the second ground for the trial court's granting of defendant's motion for a new trial, i.e., that the jury awarded excessive damages indicating passion or prejudice. The jury awarded the plaintiff $180,000 in general damages, $12,500 for special damages and $7,500 for loss of wages. As the majority notes, general damage awards in the range of or greater than $180,000 have been held not to be excessive in malpractice cases involving breast surgery.

A review of the record indicates such an award was justified. After the subcutaneous mastectomy, plaintiff experienced severe pain and firmness in her breasts. She was at her home, having been handled as an outpatient for the surgery, when the defendant was notified of her distress. He authorized her roommate to administer Thorazine by injection to provide relief from the post-operative pain, relying on her roommate's experience as a flight attendant. Two days later the plaintiff was examined in the defendant's office. Defendant detected that plaintiff had lost some fluid from the breast implants because the skin over the upper half of each breast was rippling and wasn't filled out by the implants. He recommended a second operation.

When plaintiff's employer contacted defendant with regard to the second operation, defendant indicated that more breast tissue was removed at the first operation than anticipated, the implants lost fluid resulting in a post-operative deformity where the cavities were not filled out, and larger prostheses were needed. A third operation was required because plaintiff's breasts became seriously infected. Both implants were removed from plaintiff's breasts, leaving her in a deformed condition for several months. In a fourth operation,

new implants were inserted in her breasts. The fifth operation was required to correct a serious asymmetry between plaintiff's breasts and to alleviate substantial pain resulting from plaintiff's earlier operations. Her breasts remain asymmetrical and scarred. She is unable to breast feed her children.

Defendant refers to discrepancies between the verdict on special damages and the evidence introduced at trial. Those discrepancies are minor. (There appears to be $3,000 extra for medical expenses and $52 extra for lost wages.) These differences do not warrant setting aside a jury verdict. *Bodon v. Suhrmann*, 8 Utah 2d 42, 327 P.2d 826 (1958). The trial court should have modified the verdict for special damages consistent with the evidence, and this Court can do so on appeal. *Jensen v. Denver & Rio Grande R.R. Co.*, 44 Utah 100, 138 P. 1185 (1915).

As an additional basis for reversing the trial judge's ruling in this case, I rely on the fact that he failed, either in the record or in his order, to articulate the factual basis for his ruling. The standard of review to which this Court has adhered in reviewing grants of new trials is one of extreme deference to the discretion of the trial court, which is in contravention of our usual deference to the verdicts of juries on questions of fact.

In order to justify such contravention, we should hold that the factual *reasons* for the trial judge's ruling must either appear on the face of the record or be clearly articulated by the judge in his order. Such reasons might include the judge's strong impressions regarding credibility of witnesses, his belief that an error of law was committed by the jury, or any other cause for determining that an injustice had been done by the jury's verdict. However, a trial judge's discretion ought not to be exercised arbitrarily and capriciously, as I believe was the case here. His order merely recites the language of the rule and does not specify any particular aspects of this trial or the verdict that caused him concern. Considering the trial judge's unusual pow-

er to intervene in the results of our jury trial system under the new-trial rule, a requirement that the judge openly explain the reasons for the exercise of his discretion is appropriate and perhaps necessary to prevent not only actual arbitrariness, but also *apparent* arbitrariness.

Finally, I disagree with the majority's rejection of plaintiff's argument regarding possible bias on the part of the trial court as it relates to the exercise of discretion in the granting of a new trial. I believe the record is sufficiently plain in demonstrating the court's hostility to plaintiff's cause of action to overcome the presumption that its discretion was fairly exercised.

The trial judge, in a pretrial exchange with counsel, remarked that of thirteen medical malpractice cases that had come before him two were directed verdict cases and eleven had resulted in no causes. Thereafter, during trial, the court:

1. Interrupted and criticized plaintiff's counsel for mentioning in his opening statement his projection of the amount of damages that would be proved at trial.

2. Refused to permit plaintiff's counsel to show photographs, which were admitted in evidence, to the jury to illustrate the testimony of the witnesses at the time such testimony was being given.

3. Refused to permit plaintiff's counsel to use illustrations of portions of technical treatises (posters) in evidence so that the jury could read along with the text while the text was being used to cross-examine experts.

4. Repeatedly sustained defense counsel's objections, often incorrectly, and on one occasion himself substituted an incorrect ground for the one (incorrect also) that defense counsel had offered.

5. Refused to let plaintiff testify and have admitted documentation about her actual medical expenses, insisting that those amounts would have to be verified as "reasonable" by some independent witness. He later refused to let plaintiff's expert testify about reasonableness.

538

6. Refused to permit use of scientific publications in cross-examination of defendant because they were not authenticated by defendant (who testified, "I do not consider any writer, any author authoritative") and then refused to permit plaintiff's counsel to authenticate the publications with his own expert witness.

7. Refused to permit plaintiff's expert to answer a question about his opinion of whether defendant was "negligent" and later permitted defendant's experts to answer whether defendant had "met the standard of care."

In conclusion, I would order that the jury's verdict be reinstated; that within a reasonable time appellant file in this Court a *remittitur* in the sum of $3,090.43 and accept a net verdict of $196,909.57; and that the judgment be modified accordingly.